# IN THE COURT OF APPEALS OF IOWA

No. 19-0902
Filed September 2, 2020

**SCOTT ROLENC,**
      Plaintiff-Appellant,

**vs.**

**JUDITH C. ROLENC, an INDIVIDUAL, JUDITH C. ROLENC, SUCCESSOR TRUSTEE OF THE RONALD C. ROLENC REVOCABLE TRUST, and JUDITH C. ROLENC, TRUSTEE OF THE JUDITH C. ROLENC REVOCABLE TRUST, and BRIAN S. MENSEN, GUARDIAN AND CONSERVATOR OF JUDITH C. ROLENC, WARD,**
      Defendants-Appellees.

_____

Appeal from the Iowa District Court for Montgomery County, Craig M. Dreismeier, Judge.

Scott Rolenc appeals the ruling on his action for specific performance of a stock purchase agreement. **AFFIRMED.**

Keith A. Harvat of Houghton Bradford Whitted, PC LLO, Omaha, Nebraska, for appellant.

Marcus Gross, Jr. and Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellees.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

This appeal concerns an action for specific performance of a stock purchase agreement for Red Oak Diesel Clinic (RODC), a closely held corporation. Ronald Rolenc was a partner with another person when RODC started in 1969. The primary business of RODC is remanufacturing, rebuilding, and repairing diesel engine fuel injection systems. After buying out his business partner, Ronald incorporated RODC in 1976. His wife, Judith, worked in the business as a bookkeeper and secretary. They had three sons, Scott, Steve, and Stan, who also worked in the family business at various times. Ronald and Judith were the only shareholders until 1993, when they made a gift of seventy-six shares of RODC to their son, Scott. The three also signed a stock purchase agreement to provide for the sale and purchase of stock under certain conditions. Ronald and Judith continued to gift Scott shares of RODC. By December 2015, Ronald and Judith each owned 1136 shares of RODC and Scott owned 328.

After Ronald and Judith retired in March 2016, their son, Stan, became president of RODC. Ronald and Judith planned to gift their shares of RODC to Stan so that Stan would hold 51% and Scott would hold 49% of RODC's shares. But they never transferred the stock, and Ronald died in November 2016.

In May 2017, Scott tried to purchase Ronald's RODC shares. In response, Stan presented Scott with a notice signed by Judith, stating Scott's employment with RODC was terminated. In July 2017, Stan also signed a notice terminating Scott's employment with RODC in order "[t]o be technically correct in accordance with the 1993 Stock Purchase Agreement, so that we could effectively end that

Agreement." At that time, Judith paid Scott $82,649.44 for his 328 shares of stock, the price listed in Exhibit B of the stock purchase agreement.

Scott sued Judith seeking specific performance of the stock purchase agreement. Scott asserted that the provisions of the stock purchase agreement required him to purchase Ronald and Judith's shares when they retired and that he was ready, willing, and able to do so. But relying upon the representations of Ronald and Judith on their intention to gift and transfer their shares of RODC to both he and Stan, Scott "agreed not to exercise his purchase options provided under the terms of the Agreement so long as Ronald and Judy gifted and transferred their shares of Red Oak Diesel Clinic, Inc., by December 31, 2016." He also claimed Judith breached the agreement by refusing to sell him Ronald's shares after his death. He sought specific performance of the stock purchase agreement to acquire all shares of RODC or, in the alternative, to acquire all the shares Ronald held at the time of his death.

After trial, the district court determined that specific performance "is the most appropriate remedy" given the circumstances and "the uniqueness of a closely held corporation." Because the agreement requires surviving shareholders to purchase corporate shares from the estate of a shareholder who dies in a proportionate amount to their share of the total stock owned by surviving shareholders, the court determined that Scott had to purchase 22% (250 shares) and Judith had to purchase 78% (886 shares) of Ronald's shares. Because the agreement also requires a shareholder whose employment is terminated by RODC to sell to all shares to the remaining shareholders, the court found that Judith had to purchase Scott's shares when Stan terminated Scott's employment in July 2017.

The court valued the stock at $298.13 per share, the amount stipulated when the parties entered the stock purchase agreement. Subtracting the money Scott owed for purchase of Ronald's shares ($74,532.50) from the total amount Judith owed Scott for his shares ($172,319.14), the court determined Judith owed Scott $97,786.64 and entered judgment in this amount.

On appeal, Scott contends that under the stock purchase agreement, he had the right to purchase both Ronald and Judith's shares of RODC. The parties agree that our scope of review is de novo. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020) (holding that the appellate court reviews an action for breach of contract and specific performance tried in equity de novo). In our review, we give weight to the district court's factual findings, especially credibility findings. *See Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 642-43 (Iowa 2019).

Scott cites several events that he claims should have triggered the transfer of Ronald and Judith's shares to him. He argues that the stock purchase agreement required Ronald and Judith to transfer their shares to him when they retired in March 2016. He relies on the following provision:

> **4. PURCHASE OBLIGATIONS UPON TERMINATION OF EMPLOYMENT.** Upon the termination of a shareholder's employment by the Corporation, for any reason whatsoever, the shareholder shall sell and each remaining shareholder shall purchase for the price and upon the other terms hereinafter provided that the proportion of the Shares which the selling shareholder owned at the time of such termination which equals the proportion which the number of such Shares then owned by each remaining shareholder is of the total number of the Shares then owned by all the remaining shareholders.

Scott interprets this provision to require Ronald and Judith to sell him their shares on their retirement because their retirement effectively terminated their employment with RODC.

The district court rejected Scott's interpretation of the provision regarding termination of employment, finding it was unsupported by the language of the agreement and the parties' conduct. We agree. Although the heading could be interpreted to refer to the termination of all employment, whether voluntary or involuntary, the provision limits its application to a narrower circumstance— "termination of a shareholder's employment *by the Corporation*." (Emphasis added.) The use of the phrase "by the corporation" implies that the corporation must do something to end the relationship, which does not occur when a person voluntarily retires. Nothing in the provision or elsewhere in the agreement addresses transfer of shares upon a shareholder's retirement. And if the parties intended the provision to apply to a shareholder's retirement, Scott's failure to object when Ronald and Judith discussed giving their shares to he and Stan is difficult to reconcile. Although Scott testified that he did not object because "he wanted to keep matters peaceful and at the time he wanted the arrangement with his brother to occur," the district court found his explanation was not credible because "Scott clearly had no incentive to give up that much control of the company to his brother if in theory he already owned the entire company."

Scott also argues that he was entitled to all of Judith's shares of RODC when a limited guardian and conservator was appointed for her in April 2018. He cites the provision of the stock purchase agreement that states:

**3. OPTION UPON INVOLUNTARY TRANSFER.** If other than by reason of a shareholder's death, Shares are transferred by operation of law to any person other than the Corporation (such as but not limited to a shareholder's trustee in bankruptcy, a purchaser at any creditor's or court sale or the guardian or conservator of an incompetent shareholder), the remaining shareholders within 60 days of the receipt by the last of them to receive actual notice of the transfer, in the case of a Primary Option and within 70 days of said event in the case of a Secondary Option, may exercise an option to purchase all but not less than all of the Shares so transferred in the same manner and upon the same terms as provided in paragraph 2 with respect to Shares proposed to be transferred.

The court rejected this argument as well, noting that the order appointing the limited guardian and conservator limited the guardian and conservator's authority "to make decisions, including financial decisions, 'affecting the ward arising out of any pending litigation in which [Judy] or her revocable trust is a party.'" But even if the appointment of a limited guardian and conservator caused an involuntary transfer of Judith's shares, no transfer was required because the stock purchase agreement ended when Stan terminated Scott's employment in July 2017.

Scott also challenges the finding that he was terminated in July 2017, arguing that Stan was without the authority to terminate his employment with RODC because Stan did so only to terminate the agreement and not for the sole benefit of RODC, thus violating the covenant of good faith and fair dealing. Assuming that Scott preserved this argument for appeal, we are unable to conclude that the July 2017 termination was in any way invalid. The district court found the company's recordkeeping was deficient because there "clearly has been more going on in the company than what is reflected in the minutes, etc. of the corporation. Some of the dealings in the business by both Scott and Stan are

questionable however in the end, not controlling over what happens with the ownership of this company."

Finally, Scott complains that Ronald and Judith each violated the stock purchase agreement. He claims they failed to provide him with notice of their intent to transfer their shares to their individual trusts, even though they never made the transfer. He also claims Judith violated the agreement by failing to open an estate after Ronald's death. It seem that Scott is claiming that the court erred in finding Judith is the sole shareholder on the stock purchase agreement because these "violations" of the stock purchase agreement bar the court from granting specific performance in any way that favors her. We find no merit to his arguments.

We conclude the district court properly interpreted the terms of the stock purchase agreement to apportion the sale of Ronald's shares of RODC between Scott and Judith and to require Judith to purchase Scott's shares when he was terminated in July 2017. We need not consider Scott's argument on the valuation to use of the RODC shares to compensate him.

**AFFIRMED.**